ADOLPHUS P. EWING,

*vs.*

GEORGE B. CHASE, administrator of JAMES S. CHASE, de-
ceased.

*Sussex, Sept. T.* 1861.

Injunction granted to restrain the collection of a promissory note, the con-
sideration of which had failed.

Agreement to sell a stage line and the right,under a sub-contract with the
Government contractor, to carry the mails for an unexpired term of
one year and nine months.    The vendee, after running the stage line
and carrying the mails six months, was deprived by the Government
contractor of the mails. Soon afterward,the vendor was again employed
to carry the mails and carried them for the residue of the term.  *Held*,
a fa·lure of consideration, to the value of the mail privilege, of a note
given for the purchase.

A defence founded upon the alleged default of the vendee in the carriage
of the mails is sustainable only by action of the Government, forfeit-
ing the contract.

BILL TO BE RELIEVED FROM A PROMISSORY NOTE FOR FAILURE
OF CONSIDERATION.—This bill alleged that James S. Chase,
on the 4th of September, 1854, being engaged in carrying
passengers by a stage route from Milford to Georgetown,
and also the United States mails on said route, represented

to the complainant that he held the contract and privilege of carrying said mails, with power to assign the same and the profit incident thereto, for the period of one year and nine months from the 1st day of October, 1854 ; and that Chase offered to sell to the complainant said stage line and mail contract for $800.00 ; that the complainant, confiding in the representations of Chase, accepted his offer, and thereupon an agreement in writing was made and signed by Chase as follows, viz :

"I agree to sell out my mail line from Milford to Georgetown, with six horses, one large stage, three hacks and six set of harness, to Adolphus P. Ewing, on the 1st day of October, 1854—all the articles to be in as good order as they are at this time—for the sum of eight hundred dollars on the delivery of the above-named articles. Sept. 4th, 1854.

(Signed)      JAMES S. CHASE.

Attest, JAMES P. BARKER.

The bill alleged that, pursuant to the agreement, and as the consideration therefor, the complainant, on receiving the stock therein mentioned, gave to Chase two judgment notes, dated Sept. 30th, 1854, each for $400; that the complainant, on the 1st of October, 1854, commenced running the said stage line and carrying the mails thereon, and for the period of six months continued to carry said mails, performing such duty faithfully and without any complaint on the part of the Postoffice Department ; that he then discovered that Chase had held no contract with the United States Government for the carrying of said mails, and had no assignable interest in such contract; but had only been hired to carry said mails by one John Vangesel, who held the contract with the Government; that the complainant, after six months' carrying of said mails, was discharged by the contractor, Vangesel, without any default on his part ; that Vangesel himself then

carried the mails for a few weeks, after which Chase was again employed by Vangesel to carry the mails, and continued to carry the same, together with passengers, over said route until the expiration of the before-mentioned term of one year and nine months.

The bill alleged that although Chase had, as an inducement to the purchase of the stage line and mail privilege, assured the complainant that he would receive $150 per quarter for carrying the mails, the complainant had not in fact received anything; that Chase had continued, after the sale of the stage line and mail privilege, to collect from the contractor, Vangesel, the stipulated compensation therefor, the right to the same not having been legally assigned to the complainant. The bill alleged that the complainant had paid to Chase one of the said judgment notes, with interest, which was a sufficient satisfaction for the stock which the complainant had received; that with respect to the other judgment note, for $400, there had been, through the fraudulent conduct of Chase, a total failure of consideration; but that, nevertheless, Chase in his lifetime had taken legal process for the collection of the same, which process was after his death continued by his administrator, the defendant. *Prayer* for an injunction.

The answer of the defendant, who was the administrator of James S. Chase, denied that before or at the time of the sale of the said stage line and mail privilege, James S. Chase had represented to the complainant that he held a contract with the United States Government for carrying the mails, or that he had power to assign the same; or that he had made any representations other than what appeared on the face of the written agreement. It also denied that the complainant had carried said mails without default, but on the contrary alleged that he had been negligent. The answer alleged that under the agree-

ment the complainant was only intended to be placed in the same relation to Vangesel which Chase had held; that he became entitled to receive for the carrying of said mails such compensation as the said Chase had been entitled to, but whether he had received the same the defendant did not know. The answer charged that, at the time of the sale of said mail privilege, it was notorious that Vangesel held the contract for carrying the mails and that Chase was employed under him; that the complainant must have known these facts; that he entered into the arrangement, taking the chance of his continuing to be employed by Vangesel and without any assurance or guaranty from Chase of said continued employment; and that he was discharged by Vangesel in consequence of his defaults in the said service and not through any fraudulent representations of Chase. The answer insisted that the stock assigned to the complainant, together with the privilege of carrying the mails as the said Chase had done and subject to the same risk of being discharged, formed the consideration for the two judgment notes, and that no part of such consideration had failed.

Depositions were taken on both sides. The weight of the testimony went to shew that Chase at the making of the agreement represented, or led the complainant to understand, that he held and could assign the right to carry the mails between Milford and Georgetown. The evidence with respect to the complainant's punctuality in carrying and delivering the mails was conflicting, but the weight of the testimony was favorable to the complainant. It was proved that the complainant run the line for about six months, was then turned off by Vangesel, the U. S. contractor—for what cause was not explained in the testimony—that Vangesel run the line for a short time, when Chase took it again and held it for the unexpired term of Vangesel's contract with the Government. It was further

36

proved that the horses sold to the complainant were old and the stock in poor condition, in all worth about $400.

The cause came before the Chancellor, at the Sept. T. 1861, for argument upon the bill, answer, exhibits and depositions.

*Jacob Moore* and *W. Saulsbury,* for the complainant.

The written agreement by Chase was for the sale of his " mail line from Milford to Georgetown," which can only be taken to mean a *right,* by sub-contract with Vangesel, to carry the mail. Supporting this construction are his representations, proved by two witnesses, that he had this right and could sell it. It turned out that he had not the right; and consequently Ewing was turned off, and, as is proved by the best testimony, that of the postmasters on the route, without any default of his own. Then Chase gets himself in again. It is a clear case of fraud and failure of consideration for the note now unpaid. The complainant has paid one of the notes for $400, which is equal to the proved value of the stock. The note now in question represents no more than the value of the mail privilege, of which the complainant was deprived.

*C. S. Layton* and *A. P. Robinson,* for the defendant.

The written contract speaks for itself. It does not in terms cover a mail contract, but puts the complainant in the relation Chase had held to the Government contractor. They all knew that Vangesel held the contract, and the complainant dealt with Chase as a sub-contractor, taking such rights as he had. There was no undertaking to insure the continuance of the privilege ; and Chase's representations meant no more than that he could put the complainant in his place.

HARRINGTON, CHANCELLOR.—The pleadings and evidence

in this case satisfy me that James S. Chase, being the alienee, assignee, or sub-contractor of John Vangesel in, a mail contract with the U. S. Government and the owner of stock on the road between Georgetown and Milford, and actually running the line and carrying the mails at a certain price, sold the stock and the mail contract to Chase for $800, the stock being worth about half that sum and the privilege of carrying the mails the other half.   Supposing him to have had the sub-contract, the sale of it to Ewing did not bind him to guarantee its continuance against government forfeitures; nor did it give Ewing any privity of contract with the Government or with Vangesel; but it did oblige the vendor to let Ewing have what he proposed to sell, and thereafter to do nothing on his part to take it away from Ewing.   Simple justice requires the former; a violation of the latter would be a fraud.

The line, with the mails and the stock, were delivered to Ewing and he commenced running it, and for several months continued to run it, according to the weight of evidence, with punctuality, when the mails were taken from him by Vangesel, and soon after Chase himself again run it.   Collusion between Vangesel and Chase is charged but not proved.   But, is such collusion necessary to make this result a violation of Chase's contract?   Taken either way, it is a breach of contract on his part.   If he had no right under Vangesel, such as could not be taken from him without cause, he fraudulently sold such a right.   If it was forfeited by the neglect of Ewing, such neglect should be shown affirmatively; and it could not be shown otherwise than by the action of the Government forfeiting it.   The case assumes that Chase sold an interest in Vangesel's contract with the Government, co-extensive in time with the contract; at least, he assumed to sell such a right and took complainant's notes for it, together with the stock.   Being found within that time in the exercise himself of the same right he had sold, and which had not

been forfeited by Government, he has no equitable claim on the balance of the consideration which was to have been paid for the right. The evidence shows that the complainant availed himself of it for about six months, and for that proportion of the time Chase would be entitled to a like proportion of the sum promised, but the complainant would have a right of action against Chase's administrator for an equal amount of mail money; and, to avoid circuity of action, I think it is competent for this Court now to settle both claims by a decree reaching the whole equity of the case.

Being, therefore, of opinion that the consideration for which one of these notes was given has failed, I think the complainant is entitled in equity to be relieved from the payment of it, on the ground taken in the bill ; and I must, therefore, decree a perpetual injunction, with costs.